**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DOROTHY JACKSON, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> UNIVERSAL HEALTH SERVICES, INC., as ) <br> owner and operator of DESERT SPRINGS ) <br> HOSPITAL MEDICAL CENTER and ) <br> DESERT SPRINGS HOSPITAL, a member of ) <br> THE VALLEY SYSTEMS, LLC dba ) <br> DESERT SPRINGS HOSPITAL; DESERT ) <br> SPRINGS HOSPITAL; DESERT SPRINGS ) <br> HOSPITAL MEDICAL CENTER; JIM ) <br> ZOLNOWSKI, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 2:13-cv-01666-GMN-NJK <br><br> **ORDER** |

Pending before the Court is a civil action filed by Plaintiff Dorothy Jackson ("Plaintiff") against Defendant Valley Health System LLC, *doing business as* Desert Springs Hospital Medical Center ("DSH"). (Complaint, ECF No. 1). DSH filed a Partial Motion to Dismiss (ECF No. 13) on February 10, 2014. Plaintiff filed her Response in Opposition (ECF No. 17) on March 7, 2014, and she also filed a Countermotion to Amend the Complaint (ECF No. 18) on March 10, 2014. On March 24, 2014, DSH filed a Reply in Support of their Motion to Dismiss (ECF No. 21) and a Response to Plaintiff's Countermotion to Amend. (ECF No. 22).

**I.     BACKGROUND**

According to her Complaint (ECF No. 1), Plaintiff is an African-American female who was employed by DSH from April 27, 1998 until her employment was terminated on September 12, 2011. (Complaint ¶¶ 3–4, ECF No. 1). At the time of her termination, she was

employed as a Monitoring Tech/Unit Coordinator earning $20.50 an hour. (*Id.* ¶ 5).  Plaintiff's supervisor during her employment with DSH was Defendant Jim Zolonowski ("Defendant Zolonowski"). (*Id.* ¶ 8).

Plaintiff alleges that during her employment, she was discriminated against based on both her race and her gender. (*Id.* ¶¶ 14–39).  Specifically, Plaintiff alleges that while working for DSH, she was "referred to [] as 'RuPaul,' who is an African-American male cross-dresser," she was held to different work standards and protocols than her non-African-American and male co-workers, and she was referred to as being part of a group of employees whom Defendant Zolonowski described as "lazy pieces of crap" and another group of employees whom Defendant Zolonowski described as "whiny bitches." (*Id.* ¶¶ 16, 28).  Plaintiff further alleges that when she complained about her treatment to the HR department, she was subjected to additional discipline and harassment and ultimately terminated as a result of her complaint. (*Id.* ¶¶ 40–60).  Plaintiff contends that DSH's stated reason for firing her based upon her failure to follow protocol in staffing the telemetry department was pre-textual and that other similarly situated male and non-African-American employees were not disciplined or terminated. (*Id.* ¶¶ 18–20, 31, 33–34).

After obtaining her Right to Sue Letter from the Equal Employment Opportunity Commission, Plaintiff filed her Complaint (ECF No. 1) on September 12, 2013 asserting seven causes of action: (1) race discrimination/disparate impact in violation of § 1981, (2) gender discrimination/disparate impact in violation of § 1981, (3) harassment, (4) retaliation, (5) intentional infliction of emotional distress, (6) negligent training and supervision, and (7) wrongful termination. (*Id.* ¶¶ 14–81).  In response to the Complaint, DSH filed the pending Partial Motion to Dismiss (ECF No. 13), seeking dismissal of Plaintiff's claims for race and gender discrimination in violation of § 1981, intentional infliction of emotional distress, negligent training and supervision, and wrongful termination.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l. v. Arizona Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added).

In order to survive a motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

### A. Counts 1 & 2: Race and Gender Discrimination/Disparate Impact in Violation of § 1981

Plaintiff's first two alleged causes of action are for discrimination/disparate impact on

account of her race and gender in violation of 42 U.S.C. § 1981.

However, as DSH points out in its motion, an allegation of discrimination based on disparate treatment or disparate impact is insufficient to bring a claim under § 1981. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("§ 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination.")  "In *General Building Contractors*, the Court limited § 1981 to cover only acts involving intentional discrimination, excluding from the statute's reach actions that merely have a disparate effect." *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 470 F.3d 827, 837 (9th Cir. 2006). Therefore, to the extent Plaintiff's Complaint alleges claims for discrimination based on the disparate impact of some policy, those claims are dismissed with prejudice.

Likewise, regarding Count II for gender discrimination, it is well-established that 42 U.S.C. § 1981 does not provide a cause of action for sex discrimination. *Sagana v. Tenorio*, 384 F.3d 731, 738 (9th Cir. 2004) ("The guarantee that 'all persons' may enjoy the same rights that 'white citizens' enjoy does not protect against discrimination on the basis of gender or religion") (citing *Runyon v. McCrary*, 427 U.S. 160, 167 (1976)); *see also Jones v. Bechtel*, 788 F.2d 571, 574 (9th Cir. 1986) ("It is clear that section 1981 does not provide a cause of action based on sex discrimination.").  Therefore, Plaintiff cannot state a cause of action for gender discrimination under § 1981, and Count II of her Complaint is dismissed with prejudice.

To the extent Plaintiff's claims in Count I allege that she suffered intentional racial discrimination, in order to sufficiently plead her claim, Plaintiff must allege: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *Keum v. Virgin America Inc.*, 781 F.Supp.2d 944, 954 (N.D. Cal. 2011).  While "claims under 42 U.S.C. § 1981 do not require allegations of conspiracy," Plaintiff "must show intentional discrimination on account of race." *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir.

<pre>   </pre>

1989). However, at the motion to dismiss stage, "overt acts coupled with racial remarks are sufficient to state a claim." *Id.* at 1345.

In her Complaint, Plaintiff alleges that she was "referred to [] as 'RuPaul,' who is an African-American male cross-dresser," she was held to different work standards and protocols than her non-African-American co-workers regarding the performance of her duties and the taking of breaks, and she was referred to as being part of a group[1] of employees whom Defendant Zolonowski described as "lazy pieces of crap." (Complaint ¶ 16, ECF No. 1). Plaintiff also alleges that "the conduct of Defendant and its employees has been malicious, fraudulent and oppressive and was designed to vex, annoy or harass Plaintiff." (*Id.* ¶ 24).

These allegations alone, however, are insufficient to state a claim for racial discrimination under § 1981. *See Middlebrooks v. Godwin Corp.*, 722 F.Supp.2d 82, 88 (D.D.C. 2010) ("[I]n order to pursue a cause of action under § 1981, plaintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief. Rather, plaintiff must allege some facts that demonstrate that his race was the reason for a defendant's actions."). While being referred to as RuPaul could perhaps have racial connotations, none of the other acts identified by Plaintiff as giving rise to her claim appear to have any relation to Plaintiff's race. Plaintiff's conclusory statement that she "has been discriminated against in the workplace because of [her] race" notwithstanding, all her specific allegations show is that she was not treated as well as some other employees who were not African-American, not that she was intentionally discriminated against because of her race. Because her Complaint falls short of the pleading standard established in *Iqbal* and *Twombly*, Plaintiff's claim for intentional racial discrimination under § 1981 must be dismissed. However, because amendment does not appear to be futile at this time, this claim is dismissed without prejudice.

---

[1] Notably, Plaintiff does not allege the ethnicity of any other member of this group. (Complaint, ECF No. 1).

### B.  Counts 5 & 6: Intentional Infliction of Emotional Distress and Negligent Training and Supervision

Plaintiff's fifth and sixth causes of action are for the common law torts of intentional infliction of emotional distress and negligent training and supervision.  However, this Court and the Supreme Court of Nevada have held that Nevada Revised Statutes § 613.330 et seq. "provides the exclusive remedy for tort claims premised on illegal employment practices." *Brinkman v. Harrah's Operating Co., Inc.*, 2008 U.S. Dist. LEXIS 123992, at *5 (D. Nev. Oct. 16, 2008); *see Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989) ("the Legislature has addressed the gravity of violating Nevada's public policy against age discrimination by defining the extent of the remedy available to parties injured by such discrimination."); *D'Angelo v. Gardner*, 819 P.2d 206, 217 n.10 (1991) ("no *additional* court-created remedies … arise out of age-based wrongful discharge for which tort recovery is available by statute.").

Both Plaintiff's claim for intentional infliction of emotional distress and her claim for negligent training and supervision are based on the same alleged illegal employment practices underlying her discrimination claims. *See* (Complaint ¶¶ 61–65, ECF No. 1 (citing no additional facts under her claim for emotional distress other than her general allegations and a recitation of the elements)); (*Id.* ¶ 69 ("Defendant failed to properly hire, train and supervise its agents, servants or employees herein with respect to retaliation, anti discrimination laws, and the effects of such behavior, among other things."[2])).  Under Nevada Revised Statues § 613.330, "it is unlawful employment practice to discriminate against any person because of his or her race or color." *Painter v. Atwood*, 912 F. Supp. 2d 962, 964 (D. Nev. 2012).  Therefore, Plaintiff's claims based on racial discrimination are "clearly intended to be remedied by the

---

[2] Plaintiff argues in her Response that the phrase "among other things" in her Complaint shows that her negligent training and supervision claim is not solely based on discrimination in the workplace. (Response 9:14-10:10, ECF No. 17).  However, even if Plaintiff does allege in her Complaint that DSH's employees were negligently trained and supervised regarding matters other than unlawful discrimination, such a conclusory statement does not provide DSH reasonable notice of Plaintiff's claims. *See Twombly*, 550 U.S. at 555.

statutory framework" and do not give rise to separate common law tort claims. *See id.* at 964–65 (noting that Nevada Revised Statues § 613.330 provided the exclusive remedy for claims against employers of unlawful behavior enumerated in it, such as race or age discrimination, but finding that common law claims for sexual harassment are not precluded by the statute).

Because Plaintiff's claims in Count 5 and 6 are premised on allegations of her employer's illegal racially discriminatory practices, Nevada Revised Statues § 613.330 is the exclusive remedy for these claims. Accordingly, Plaintiff's common law tort claims for intentional infliction of emotional distress and negligent training and supervision are dismissed. However, because Plaintiff asserts in her Response that these claims are based on additional conduct beyond DSH's alleged racial discrimination, the Court will dismiss these counts without prejudice in order to allow Plaintiff to sufficiently plead alternative grounds for these claims that are not precluded by statute.

### C. Count 7: Wrongful Termination

Plaintiff's seventh cause of action is for wrongful termination, known in Nevada as tortious discharge.

A tortious discharge may arise regardless of an employee's at-will status, when no comprehensive statutory remedy exists and the employer terminates an employee for reasons which violate public policy or the discharge is in retaliation for the employee's actions that "are consistent with or supportive of sound public policy and the common good." *D'Angelo v. Gardner*, 819 P.2d 206, 212, 216, 218 (Nev. 1991). "To prevail, the employee must be able to establish that the dismissal was based upon the employee's refusing to engage in conduct that was violative of public policy or upon the employee's engaging in conduct which public policy favors (such as, say, performing jury duty or applying for industrial insurance benefits)." *Bigelow v. Bullard*, 901 P.2d 630, 632 (Nev. 1995). Accordingly, "public policy tortious discharge actions are severely limited to those rare and exceptional cases where the employer's

conduct violates strong and compelling public policy." *Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989). Some examples of these cases include: "the discharge of an employee for seeking industrial insurance benefits, for performing jury duty, for refusing to work under unreasonably dangerous conditions, or for refusing to violate the law." *Alam v. Reno Hilton Corp*., 819 F. Supp. 905, 910 (D. Nev. 1993).

Plaintiff alleges that DSH "terminated [her] employment under the false premise that she violated the Defendants policies because she was the only Monitoring Tech in the Telemetry Room." (Complaint ¶ 74, ECF No. 1). Plaintiff also alleges that prior to being terminated, she had complained about DSH's employment practices in staffing the telemetry department, which placed the health, safety, and welfare of patients in jeopardy. (*Id.* ¶¶ 75–77). She therefore contends that the real reason she was terminated was because "it was easier for [DSH] to terminate Plaintiff's employment rather than comply with its legal obligations under state and federal laws." (*Id.* ¶ 73). She further alleges that her discharge "was in direct contravention of the public policy of the State of Nevada and [DSH]'s own action and inaction with respect to its hiring and staffing practices are what led to the Plaintiff being the only Monitoring Tech in the Telemetry Room." (*Id.* ¶ 78).

Plaintiff, however, fails to ever identify what public policy she alleges has been violated. (Complaint ¶¶ 72–81, ECF No. 1). Therefore, her Complaint fails to give DSH sufficient notice of her tortious discharge claim under the pleading standards in *Iqbal* and *Twombly*.

Moreover, Plaintiff appears to allege that she was discharged for complaining to DSH about their unsafe staffing policies, and, therefore, she was engaged in some kind of

/ / /
/ / /
/ / /
/ / /

whistleblowing activity that should be protected by public policy.[3] (*Id.* ¶ 73). However, "such internal reporting or exposure is merely private and proprietary and is not sufficient to maintain a tortious discharge claim based on whistleblowing." *Bielser v. Prof'l Sys. Corp.*, 321 F. Supp. 2d 1165, 1169 (D. Nev. 2004) (citing *Wiltsie v. Baby Grand Corp.*, 774 P.2d 432, 433–34 (Nev. 1989)). Accordingly, because internal reporting to an employer is not entitled to public policy protection, Plaintiff's tortious discharge claim based on her internal complaining about DSH's policies must fail, and Count 7 in her Complaint is dismissed. However, because it is unclear from the Complaint whether Plaintiff may have some other ground for alleging her discharge was in violation of public policy, the Court will dismiss this claim without prejudice.

### D. Motion to Amend

Plaintiff filed a motion requesting that she be permitted to file an amended complaint if this Court dismisses any of her causes of action in the Complaint. (Countermotion to Amend, ECF No. 18).

Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by

---

[3] In her Response, Plaintiff changes tack from her pleading and argues that the discrimination and retaliation she experienced was a violation of public policy. (Response 14:1-15:3, ECF No. 17). However, in the very case relied on by Plaintiff in her Response, *D'Angelo v. Gardner*, the Supreme Court of Nevada held that "it will not recognize a claim for tortious discharge when an adequate statutory remedy already exists, as it would be unfair to a defendant to allow additional tort remedies under such circumstances." *Ozawa v. Vision Airlines, Inc.*, 216 P.3d 788, 791 (Nev. 2009) (explaining the holding in *D'Angelo*, 819 P.2d at 217). Because Plaintiff has an adequate statutory remedy for her discrimination claims under either 42 U.S.C. § 1981 or Nev. Rev. Stat. § 613.330, that discrimination cannot be a basis for her tortious discharge claim. *See D'Angelo*, 819 P.2d at 217.

amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

Here, the Court finds no evidence of undue delay or bad faith. Furthermore, under the current circumstances, there is no reason to suspect that the claims in the Complaint which have been dismissed without prejudice cannot be sufficiently alleged in an amended complaint.

Local Rule 15-1, however, requires that a party moving to amend a pleading must attach the proposed amended pleading to their motion to amend, and if that party's motion to amend is granted, then the attached pleading shall be filed and served. D. Nev. L.R. 15-1. While Plaintiff did attach a document entitled "First Amended Complaint" to her Counter Motion to Amend (Ex. A to Countermotion to Amend 19–40, ECF No. 18), the "First Amended Complaint" only provides some additional detail regarding the events leading up to Plaintiff termination but does not correct any of the deficiencies noted in this Order. (*Id.* ¶¶ 1–31). The Court, therefore, denies Plaintiffs' Countermotion to Amend without prejudice and grants Plaintiff leave to file an amended complaint that may sufficiently amend her original complaint. (ECF No. 18).

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 13) is **GRANTED**. Plaintiff's claims for disparate impact and for gender discrimination under § 1981 are dismissed with prejudice. Plaintiff's claims for intentional racial discrimination, intentional infliction of emotional distress, negligent training and supervision, and tortious discharge are dismissed without prejudice. Plaintiff shall have until September 26, 2014 to file an amended complaint correcting the definiteness described in this Order.

**IT IS FURTHER ORDERED** Plaintiff's Countermotion to Amend the Complaint (ECF No. 18) is **DENIED without prejudice**.

**DATED** this 15th day of September, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge